**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0552n.06

No. 15-6363

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 28, 2016
DEBORAH S. HUNT, Clerk

ROY STILTNER,                                    )
                                                 )
        **Petitioner-Appellant,**                )        ON APPEAL FROM THE
                                                 )        UNITED STATES DISTRICT
v.                                               )        COURT FOR THE EASTERN
                                                 )        DISTRICT OF KENTUCKY
DEEDRA HART, Warden,                             )
                                                 )        **OPINION**
        **Respondent-Appellee.**                 )
                                                 )

Before:  MOORE, McKEAGUE, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Roy Stiltner, a seventy-year-old man currently serving a life sentence in a Kentucky state prison, appeals the district court's dismissal of his petition for a writ of habeas corpus.  The petition, which Stiltner filed in 2013, was sixteen years late.  Stiltner argued that he was entitled to equitable tolling due to mental incompetence, but the district court disagreed, concluding that although Stiltner is mentally incompetent, he did not diligently pursue his claims.  Because Stiltner did diligently pursue his claims to the extent that he understood them, he is entitled to equitable tolling.  We therefore **REVERSE** the district court's dismissal of the petition and **REMAND** for further proceedings consistent with this opinion.

# I. BACKGROUND

## A. Petition for Writ of Habeas Corpus

On May 12, 1986, Roy Stiltner pleaded guilty to murder, and a state court sentenced him to life in prison. R. 10-3 (App. Vol. I at 14, 16–18, 19–22) (Page ID #140, 142–145, 145–48). Stiltner did not appeal. Ten years later, Congress enacted the Antiterrorism and Effective Death Penalty Act, or AEDPA. Pub. L. No. 104-132, 110 Stat. 1214 (1996). AEDPA amended 28 U.S.C. § 2244 to include a one-year period of limitations for habeas petitions brought by prisoners challenging state-court judgments. *See* 28 U.S.C. § 2244(d)(1)(A). Prisoners whose convictions were finalized before Congress enacted AEDPA had one year after AEDPA's effective date of April 24, 1996 to file habeas petitions. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002). Stiltner, therefore, had until April 24, 1997 to file a habeas petition.

On April 22, 2013, almost sixteen years after the filing deadline had passed, Stiltner filed a habeas petition in the United States District Court for the Western District of Kentucky.[1] R. 1 (Habeas Pet.) (Page ID #1). Stiltner's petition stated two grounds for relief: ineffective assistance of counsel for advising Stiltner to plead guilty even though he was "mentally retarded" and ineffective assistance of counsel for failing to inform Stiltner of his right to appeal. *Id.* at 6, 8 (Page ID #5, 7). Stiltner acknowledged that his petition was untimely, but argued that he was entitled to equitable tolling due to "mental retardation." *Id.* at 15 (Page ID #14); *see also* R. 1-1 (Mem. in Support of Habeas Pet. at 1–9) (Page ID #17–25).

---

[1]The case was later transferred to the Eastern District of Kentucky. R. 4 (Order Transferring Case) (Page ID #80).

The district court expressed skepticism as to whether mental retardation entitled a petitioner to equitable tolling, but allowed the parties to brief the issue. R. 7 (First Order to Show Cause at 2–3) (Page ID #87–88); R. 8 (Petr. Resp. to First Order to Show Cause) (Page ID #89); R. 10 (Respt. Resp. to First Order to Show Cause) (Page ID #108); R. 12 (Petr. Reply to First Order to Show Cause) (Page ID #315). Instead of ruling on equitable tolling, however, the district court turned its attention to a different basis for dismissal: failure to exhaust state remedies. R. 13 (Second Order to Show Cause at 1–2) (Page ID #327–28). The district court concluded that Stiltner had not met AEDPA's exhaustion requirements and dismissed Stiltner's petition without prejudice. R. 16 (Order Dismissing Habeas Pet.) (Page ID #336). Stiltner filed an amended petition on April 15, 2014, R. 17 (Am. Habeas Pet.) (Page ID #337), and the district court concluded that Stiltner had fulfilled AEDPA's exhaustion requirements and ordered an evidentiary hearing on equitable tolling, R. 22 (Order re: Evidentiary Hr'g at 2–3, 7) (Page ID #424–25, 429). The district court also appointed counsel for Stiltner. R. 25 (Order Appointing Counsel) (Page ID #437).

## B. Evidentiary Hearing

The evidentiary hearing focused on the extent of Stiltner's "mental retardation." *See* R. 17 (Am. Habeas Pet. at 15) (Page ID #350). The district court heard testimony from Dr. Eric Drogin, David Blair and Scot Gaither—two of Stiltner's fellow prisoners, and Stiltner himself. R. 84 (Tr. of Evidentiary Hr'g at 2) (Page ID #800).

Drogin testified that he first examined Stiltner in 2006 on behalf of Kentucky's Department of Public Advocacy. *Id.* at 11, 15 (Page ID #809, 813). As part of this assessment,

3

Drogin administered an IQ test called the Wechsler Adult Intelligence Scale ("WAIS"), "the most commonly used full test of intelligence." *Id.* at 13 (Page ID #811). The version of WAIS that Drogin administered included a full-scale IQ score as well as a verbal IQ score (which measures an individual's ability to process language) and a performance IQ score (which measures an individual's ability to complete tasks). *Id.* at 15 (Page ID 813). Drogin testified that most adults receive a full-scale IQ score between 85 and 115, but that Stiltner received a 62, which is "within a range that is typically associated with what [clinical psychologists previously] called 'mental retardation' and currently refer to as 'intellectual disability.'" *Id.* at 14–15 (Page ID #812–13). Stiltner also received a verbal IQ score of 64 and a performance IQ score of 65. *Id.* at 15–17 (Page ID #813–15). When asked how Stiltner's full-scale IQ score could be lower than his verbal IQ score or his performance IQ score, Drogin answered that the full-scale IQ score is not a combination of the other two scores, but rather is a more comprehensive score that is compared to a "standardization sample." *Id.* at 17 (Page ID #815). Drogin explained that the reason that Stiltner's full-scale IQ score was lower than the other two scores was "because of how unusual it is that somebody would perform so poorly in both of those areas at the same time." *Id.*

Drogin also tested Stiltner's logical reasoning skills by asking him to explain relationships between objects—such as how a boat and a car are similar. *Id.* at 22 (Page ID #820). Stiltner could not answer any of Drogin's questions correctly. *Id.* On a separate vocabulary test, Stiltner scored in the third percentile, which Drogin explained meant that, out of

4

100 people in Stiltner's age group, Stiltner would be expected to do better than only three of the 100 "in terms of understanding words that are spoken to him." *Id.* at 25 (Page ID #823).

Drogin also administered a "cognitive capacity screening examination." *Id.* at 26 (Page ID #824). Drogin determined that Stiltner was aware of the date and that he was in prison, but that Stiltner "had some difficulty nailing down the location [of the prison]." *Id.* at 27 (Page ID #825). Stiltner's responses also evinced a very limited short-term memory. *Id.* at 28 (Page ID #826). Drogin concluded that Stiltner had "diminished cognitive capacity," in that he had "difficulty doing things that by in large we would expect normal people to be able to do." *Id.* When asked what those things might be, Drogin said, "[things] [s]uch as tell you what town they have been in for the last several years, such as being able to remember some simple things that you ask them to remember, such as being able to do very basic repetition of numbers that you give them." *Id.*

The district court also heard testimony from two of Stiltner's fellow prisoners: Blair and Gaither. Blair was in prison with Stiltner in the 1990s and then again in the early 2000s. *Id.* at 65 (Page ID #863). Blair spent a lot of time with Stiltner—in the 1990s, the two were roommates. *Id.* Blair testified that, from his perspective, Stiltner has the mental capacity of "a 2 or a 5-year-old." *Id.* at 82 (Page ID #880). An exchange between Blair and Stiltner's attorney is illustrative:

> Q. Did you ever see [Stiltner] watch any TV shows?
> A. Yeah.
> Q. Do you recall any specific ones?
> A. Westerns mostly, stuff like that.

> Q. Do you recall if he thought that they were real or they were make believe?
> A. A couple of them he thought was real, yeah.
> Q. Which ones did he think were real?
> A. I think it was when John Wayne, some kind of El Dorado or something like that, El Dorado.
> Q. So he thought it was real life?
> A. He thought it was real life, yeah.

*Id.* at 83 (Page ID #881).

Blair started helping Stiltner with his case in the 1990s. *Id.* at 67 (Page ID #865). When asked why he started helping Stiltner, Blair explained that once, when Blair was talking to another prisoner about that prisoner's case, Stiltner walked up to Blair and said, "I was -- I get something done on mine." *Id.* Stiltner then turned and left. *Id.* at 82 (Page ID #880). According to Blair, this was typical for Stiltner, who walked around "like he was in a daze all the time." *Id.* at 66 (Page ID #864). Although Stiltner never told Blair what he meant by "I get something done on mine," Blair assumed that Stiltner meant he wanted legal help, and Blair started working on a motion to vacate, set aside, or correct Stiltner's sentence under Kentucky Rule of Criminal Procedure 11.42, which Blair did not file until 2004. *Id.* at 68 (Page ID #866); *see also* R. 1-8 (Rule 11.42 Mot.) (Page ID #53). The Rule 11.42 motion sought relief based on Stiltner's significant cognitive impairments. R. 84 (Tr. of Evidentiary Hr'g at 68) (Page ID #866); *see also* R. 1-8 (Rule 11.42 Mot.) (Page ID #53). As part of his efforts, Blair also filed a form requesting the factual contents of an investigation report in 1995. R. 84 (Tr. of Evidentiary Hr'g at 69–70) (Page ID #867–68); *see also* R. 43-8 (Req. for Factual Contents of Investigation Report) (Page ID #533). Stiltner was not involved with any of the filings. R. 84 (Tr. of

Evidentiary Hr'g at 70) (Page ID #868). According to Blair, "[h]e looked at them, but he -- he just walked away when he looked at them." *Id.* Stiltner never asked Blair questions about the work Blair was doing. *Id.* at 70–76, 81–82 (Page ID #868–74, 879–880). As Blair testified, Stiltner could not read or write, and he had a "[r]eal short" attention span. *Id.* at 71, 75–76 (Page ID #869, 873–874).

The district court then heard from Gaither, who filed Stiltner's habeas petition for him. *Id.* at 88 (Page ID #886). A year prior, Gaither also filed a post-conviction motion for Stiltner pursuant to Kentucky Rule of Civil Procedure 60.02. *Id.* at 101 (Page ID #899); *see also* R. 10-6 (App. Vol. IV at 8) (Page ID #254). Gaither explained that Stiltner never asked Gaither to help him; rather, it was Stiltner's roommate, Tim Fancher, who reached out to Gaither and asked Gaither to work on Stiltner's case. R. 84 (Tr. of Evidentiary Hr'g at 89) (Page ID #887). Other than accompanying Gaither to the mail room when Gaither sent documents to the court (which Stiltner was required to do because "an inmate has to be in the mailroom to mail [his] own document[s]"), Stiltner was not involved with any of the filings. *Id.* at 90–93 (Page ID #888–91). Stiltner did not even write the return address on the mail that Gaither sent to the court. *Id.* at 93 (Page ID #891).

When asked if he had ever seen Stiltner write anything other than his own name, Gaither testified that he had not. *Id.* at 94 (Page ID #892). Gaither explained that Stiltner cannot even fill out a canteen sheet:

> Q.   Have you ever seen [Stiltner] print anything other than his
>       name?

7

> A.   We have tried to get him to print things off his canteen sheet. We have to help him fill out his canteen sheets. But he really can't even do that without us there. And say he wants to order cheese puffs, and we had to spell cheese puffs, like, "Roy, c-h-e-e-s-e p-u-f-f-s." And he can write that down if we spell it for him or he can print it.
>
> Q.   But he can't do it by himself?
>
> A.   He can't do it by himself.

*Id.* Gaither further testified that Stiltner's memory is so poor that he cannot identify items on the canteen sheet—such as coffee—that he has ordered every single month for years. *Id.* at 95–96 (Page ID #893–94). When asked if he thought Stiltner understood what was happening in his case, Gaither replied, "No, ma'am." *Id.* at 92 (Page ID #890).

Finally, the district court heard from Stiltner. Stiltner's testimony revealed that he had a very limited understanding of the proceedings and of the legal assistance that he had received. When asked if he knew what filing the evidentiary hearing concerned, Stiltner replied, "No." *Id.* at 129 (Page ID #927). When asked if Blair ever filed anything on his behalf, Stiltner replied, "Not to my knowledge." *Id.* When asked if Fancher (Stiltner's roommate, who worked on Stiltner's case before recruiting Gaither) ever filed anything on his behalf, Stiltner replied, "I don't think so." *Id.* And when asked if Gaither ever filed anything on his behalf, Stiltner said "Maybe." *Id.* He also testified that, as best he could remember, he had not met with an attorney after pleading guilty in 1986. *Id.* at 137 (Page ID #935).

## C. Dismissal and Appeal

The Magistrate Judge issued a report a few months after the hearing. R. 91 (R. & R.) (Page ID #1100). Applying a two-prong test, the Magistrate Judge first considered whether

8

Stiltner was either unable "to personally understand the need to timely file" a habeas petition or was "unable personally to prepare a habeas petition and effectuate its filing." *Id.* at 15 (Page ID #1114). Although Stiltner needed to meet only one of these conditions, the Magistrate Judge determined that Stiltner met both. *Id.* at 16 (Page ID #1115). The Magistrate Judge found the evidence of Stiltner's mental incompetence convincing, and noted that the Warden had not introduced "any contrary medical records or testimony." *Id.* at 17 (Page ID #1116). The Magistrate Judge was also persuaded by Blair's and Gaither's "credible testimony" that they had initiated all of the filings. *Id.* at 17–18 (Page ID #1116–17).

The Magistrate Judge then considered the second prong of the test: whether Stiltner had diligently pursued his rights. *Id.* at 18 (Page ID #1117). The Magistrate Judge determined that Stiltner had not. *Id.* The legal assistance that Stiltner received, the Magistrate Judge reasoned, severed the causal link between Stiltner's mental incompetence and his failure to timely file a habeas petition. *Id.* The Magistrate Judge focused on two requests for information made on Stiltner's behalf, one by Stiltner's fellow inmate Blair requesting the factual contents of an investigation report and the other by a paralegal with Kentucky's Department of Public Advocacy requesting legal records. *Id.* at 19 (Page ID #1118); *see also* R. 43-8 (Req. for Factual Contents of Investigation Report) (Page ID #533); R. 10-3 (App. Vol. I at 23) (Page ID #149). The Magistrate Judge determined that these requests, together with two medical release forms that Stiltner had signed (forms that named a public defender as Stiltner's attorney), established that Stiltner had legal assistance during the limitations period. R. 91 (R. & R. at 19) (Page ID #1118); *see also* R. 90-1 (Medical Release Forms) (Page ID #1098–99). Although there was no

other evidence in the record of the Department of Public Advocacy's involvement in Stiltner's case during the limitations period, the Magistrate Judge found the requests and the medical releases sufficient:

> Although Stiltner's disability made it practically impossible for him to file his own petition, the record reveals three legally knowledgeable individuals [Blair, the paralegal, and the public defender] who were helping him on his case—*whether he understood what they were doing or not*—during the limitations period. Case law suggests that equitable tolling is unavailable under these circumstances.

R. 91 (R. & R. at 19) (Page ID #1118) (emphasis added).

The Magistrate Judge further determined that Blair's Rule 11.42 motion to vacate, set aside, or otherwise correct Stiltner's sentence based on Stiltner's mental incompetence provided "another basis for finding that Stiltner was not diligently pursuing his rights." *Id.* at 22 (Page ID #1121). The Magistrate Judge explained that the Rule 11.42 motion demonstrated not only that Stiltner had legal assistance, but also that the person providing this assistance—Blair—was aware of Stiltner's mental incompetence and therefore could have filed a habeas petition based on those grounds (although this habeas petition would have still been seven years late). *Id.* at 22–23 (Page ID #1121–22). The Magistrate Judge also noted that, as a result of Blair's Rule 11.42 motion, the state assigned a public defender to Stiltner's case. *Id.* at 23 (Page ID #1122). In 2006, that public defender asked Drogin to examine Stiltner. *Id.*; *see also* R. 84 (Tr. of Evidentiary Hr'g at 11) (Page ID #809). A year after that, in 2007, the public defender filed a supplemental pleading to Blair's Rule 11.42 motion as well as a motion for equitable tolling and a motion for a court-ordered evaluation of Stiltner's mental incompetency. R. 91 (R. & R. at 23) (Page ID #1122); *see also* R. 10-4 (App. Vol. II at 1) (Page ID #170). When the state court

denied Blair's Rule 11.42 motion, the public defender filed a notice of appeal in 2007 and a different public defender filed the actual appeal in 2008. R. 91 (R. & R. at 23) (Page ID #1122); *see also* R. 10-4 (App. Vol. II at 18, 20) (Page ID #187, 189). Thus, despite Stiltner's severe mental incompetence, the Magistrate Judge recommended that the district court dismiss Stiltner's petition as untimely. Recognizing that the second prong of the test presented a "close question," however, the Magistrate Judge recommended that the district court issue a certificate of appealability. R. 91 (R. & R. at 18, 26) (Page ID #1117, 1125).

The parties filed objections to the Magistrate Judge's report. The Warden objected only to the Magistrate Judge's recommendation that the district court issue a certificate of appealability and only on the grounds that Stiltner received what the Warden called "extraordinary legal assistance." R. 93 (Respt. Objs. to R. & R. at 1–2) (Page ID #1128–29). The Warden did not contest the Magistrate Judge's finding that Stiltner is mentally incompetent. *Id.* Stiltner objected to the Magistrate Judge's determination that he did not diligently pursue his rights. R. 94 (Petr. Objs. to R. & R. at 1) (Page ID #1131). Stiltner argued that the district court's inquiry is limited to whether the petitioner diligently pursued his rights *to the extent he could understand them*, and that the existence of filings that Stiltner had no involvement with (or even a basic understanding of) could not sever the causal link between Stiltner's mental incompetence and his failure to timely file a habeas petition. *Id.* at 1–11 (Page ID #1131–41).

The district court adopted the Magistrate Judge's recommendation, dismissing Stiltner's petition as untimely but granting a certificate of appealability. R. 95 (Dist. Ct. Order at 1) (Page ID #1151). Stiltner timely appealed. R. 98 (Notice of Appeal) (Page ID #1158).

## II. ANALYSIS

### A. Equitable Tolling of AEDPA's Statute of Limitations

AEDPA's one-year limitations period is not a jurisdictional bar and is therefore subject to equitable tolling where a habeas petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Although we have held that equitable tolling should be applied "sparingly," *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006), we have also recognized the need for flexibility in equitable procedures, *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012) (citing *Holland*, 560 U.S. at 650). "[F]lexibility . . . enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices." *Id.* (quoting *Holland*, 560 U.S. at 650). Thus, although our application of equitable tolling is restrained, we avoid rigid rules and consider equitable-tolling claims on a case-by-case basis. *Id.* (citing *Holland*, 560 U.S. at 650).

"[T]he party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run," but "the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). "Where the determinative facts are undisputed, the decision whether to apply equitable tolling is reviewed de novo." *Jones*, 689 F.3d at 627 (citing *Solomon*, 467 F.3d at 932). The Warden does not contest any of the facts establishing Stiltner's mental

incompetence,[2] and Stiltner does not contest any of the facts establishing that he had some legal assistance. The parties' only dispute is whether, given those facts, Stiltner is entitled to equitable tolling. As part of this dispute, of course, the parties disagree as to whether Stiltner's mental incompetence *caused* the delay. But in the context of equitable tolling, causation is not a fact—it is a legal determination *based* on facts. *See Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005) (reviewing petitioner's equitable-tolling claim de novo where parties disagreed as to whether the petitioner had "establish[ed] a causal connection between her mental condition and her ability to file a timely petition" because, as the court explained, "[the] facts are undisputed and the district court's decision to grant or deny equitable tolling involves only a question of law"). Because the facts are undisputed here, we review Stiltner's equitable-tolling claim de novo.

## B. Equitable Tolling for Mental Incompetence

In *Ata v. Scutt*, we recognized that a petitioner's mental incompetence can constitute an extraordinary circumstance under *Holland*. 662 F.3d 736, 742 (6th Cir. 2011); *see also McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008). In so holding, we fashioned the following test: "[t]o obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his

---

[2]The Magistrate Judge noted as much in his Report and Recommendation. *See* R. 91 (R. & R. at 16) (Page ID #1115) ("The essentially unchallenged exhibits and testimony in this case indicate that Stiltner did not understand his need to timely file."); *id.* at 17 (Page ID #1116) ("Dr. Drogin testified that his preliminary tests indicated Stiltner 'was an individual of substantially limited intellectual capacity.' The Court was not given any contrary medical records or testimony." (internal citation omitted)).

mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Holland*, 662 F.3d at 742. We explained that "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations." *Id.* "Rather, a causal link between the mental condition and untimely filing is required." *Id.* However, because *Ata* considered an equitable-tolling claim in the context of an appeal from a denial of an evidentiary hearing, *Ata* stopped short of engaging in a full analysis of the claim, instead remanding the case to the district court. *Id.* at 745.

In need of additional guidance, the Magistrate Judge looked to *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), which addresses the requirements that we articulated in *Ata*. *Bills* sets forth a two-prong test for determining eligibility for equitable tolling due to mental incompetence:

> (1) *First,* a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second,* the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1099–1100 (emphasis in original) (internal citation omitted) (footnote omitted). *Bills*'s first prong fleshes out *Ata*'s requirement that a petitioner be mentally incompetent by explaining what kind of mental incompetence merits equitable tolling. *Bills*'s second prong fleshes out

*Ata*'s requirement that there be a "causal link" between the mental incompetence and the delay by placing causation within the context of a totality-of-the-circumstances inquiry. The second prong also incorporates *Holland*'s requirement that a petitioner demonstrate that he diligently pursued his rights, while recognizing that a mentally incompetent petitioner can diligently pursue his rights only to the extent that he understands them. As *Bills* explains, "the 'extraordinary circumstance' of mental impairment can cause an untimely habeas petition at different stages in the process of filing by preventing petitioner from understanding the need to file, effectuating a filing on his own, or finding and utilizing assistance to file." *Id.* at 1100. "Thus, a petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure. The petitioner therefore always remains accountable for diligence in pursuing his or her rights." *Id.* Accordingly, like the Magistrate Judge and the district court, we apply both *Ata* and *Bills* to Stiltner's claim.

### 1. Whether Stiltner is Mentally Incompetent

The Warden contends that Stiltner has not met the first prong of the test because Stiltner has not shown that he is mentally incompetent. Appellee Br. at 48–51. The Warden waived this argument by not raising it below. *See* R. 93 (Respt. Objs. to R. & R. at 1–2) (Page ID #1128–29). Parties who disagree with a Magistrate Judge's recommendation must "file objections with the district court or else waive [the] right to appeal." *Souter v. Jones*, 395 F.3d 577, 585 (6th Cir. 2005) (quoting *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981)). "[O]nly those specific objections to the [Magistrate Judge's] report made to the district court will be preserved

for appellate review." *Id.* at 585 (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)). The Warden objected only to the Magistrate Judge's recommendation that the district court issue a certificate of appealability and only on the basis that Stiltner received what the Warden called "extraordinary legal assistance." *See* R. 93 (Respt. Objs. to R. & R. at 1–2) (Page ID #1128–29). The Warden did not object to the Magistrate Judge's finding that Stiltner is mentally incompetent. *Id.* Thus, the Warden's argument is waived.

Even if we were to consider the Warden's argument, it is meritless. The Warden objects to Stiltner's use of the term "mental retardation," R. 17 (Am. Habeas Pet. at 15) (Page ID #350), because, as the Warden argues, "[m]ental retardation . . . is not evidence of incompetency," Appellee Br. at 50. But the question is not what term Stiltner uses in his habeas petition; the question is what Stiltner's evidence shows. And Stiltner's evidence shows that he is mentally incompetent—that he is "unable rationally or factually to personally understand the need to timely file" and "unable personally to prepare a habeas petition and effectuate its filing." *Bills*, 628 F.3d at 1100.

### 2. Whether Stiltner Diligently Pursued His Claims

In addition to demonstrating mental incompetence, a petitioner must show that "his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Ata*, 662 F.3d at 742. Under *Holland*, a petitioner must also show that he has been pursuing his rights diligently. *Holland*, 560 U.S. at 649. Combining these two requirements, *Bills*'s second prong provides that "[a] petitioner must show diligence in pursuing the claims to the extent he could

understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." *Bills*, 628 F.3d at 1099–1100.

*Bills*'s second prong considers *Ata*'s causation requirement and *Holland*'s diligence requirement together because they serve the same purpose in this context. The causation requirement ensures that "[the petitioner's] mental incompetence *caused* his failure to comply with AEDPA's statute of limitations"—in short, that there is not another reason for the delay that would render equitable tolling inappropriate. *Ata*, 662 F.3d at 742 (emphasis added). The diligence requirement focuses on a specific reason that would render equitable tolling inappropriate: negligence. *Holland*, 560 U.S. at 649, 653. And because both the causation requirement and the diligence requirement are "highly fact-dependent," *Bills*, 628 F.3d at 1097, *Bills* considers them within the context of a totality-of-the-circumstances inquiry—an inquiry that both acknowledges the importance of access to assistance and recognizes that a petitioner can diligently pursue his claims only to the extent that he understands them, *id.* at 1099–1100.

The evidence in this case shows that Stiltner barely understood his claims, if he understood them at all. Drogin testified that Stiltner's IQ score on the WAIS was "within a range that is typically associated with what [clinical psychologists previously] called 'mental retardation' and currently refer to as 'intellectual disability.'" R. 84 (Tr. of Evidentiary Hr'g at 15) (Page ID #813). The evidence demonstrates that this intellectual disability is severe. In addition to being unable to read or write, Stiltner has an extremely poor memory, an attention span of "seconds," and significant difficulty organizing his thoughts and understanding even

simple logical relationships. *Id.* at 28, 34–35, 71, 75–76, 96, 100 (Page ID #826, 832–33, 869, 873–874, 894, 898). Stiltner is also severely limited in his ability to process language. In discussing the ramifications of this limitation, Drogin testified: "A person who doesn't understand what is being said to him will be at a significant disadvantage in attempting to obtain assessments, in attempting to understand what other people are telling him in any variety of business or social or legal or other context[s]." *Id.* at 26 (Page ID #824).

Stiltner's mind, according to Blair and Gaither, who have both spent a considerable amount of time with Stiltner, is like that of a very young child. *Id.* at 82, 96 (Page ID #880, 894). Not surprisingly, Blair and Gaither testified that Stiltner never told them to file anything on his behalf; rather, Blair and Gaither filed documents on their own accord. Indeed, the closest Stiltner ever came to asking for assistance was when Stiltner approached Blair and said, "I was -- I get something done on mine." *Id.* at 67 (Page ID #865). Other than that, Stiltner never asked for legal help. He did not even ask basic questions about the work that Blair and Gaither were doing for him. The extent of Stiltner's involvement was listening to Blair read him legal documents that he could not understand and accompanying Gaither to the prison mail room. *Id.* at 70–76, 81–82, 90–92 (Page ID #868–74, 879–880, 888–89). In short, the diligence that Stiltner could exercise was extremely limited.

Our analysis, however, does not end here. The inquiry into diligence also considers a petitioner's "reasonably available access to assistance." *Bills*, 628 F.3d at 1099–1100. We consider legal assistance because legal assistance—whether in the form of an attorney or a "'jailhouse lawyer'—an inmate who assists other prisoners with legal filings"—makes it easier

for a petitioner to timely file a habeas petition. *Id.* at 1101. Accordingly, if a petitioner had access to legal assistance but did not timely file a petition, we might conclude that the petitioner was not diligent in pursuing his claims. *Id.* Access to legal assistance, therefore, can be an important factor. *Id.* Indeed, a number of courts have found it to be *the* factor on which an equitable-tolling claim turns. *See, e.g.*, *Brown v. McKee*, 232 F. Supp. 2d 761, 768 (E.D. Mich. 2002) (stating that "[t]he exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity"); *see also McSwain*, 287 F. App'x at 457 (noting that the record evidence indicated that the petitioner "was able to pursue both direct and collateral challenges to her conviction in the state courts notwithstanding her mental illness"); *Price v. Lewis*, 119 F. App'x 725, 726–27 (6th Cir. 2005) (denying equitable tolling based on mental illness where the habeas petitioner had actively pursued his claims during the limitations period).

The legal assistance in this case is not insignificant. The record shows that Stiltner had access to legal assistance as early as two years before the filing deadline. In 1995, Blair filed a form requesting the factual contents of an investigation report. R. 84 (Tr. of Evidentiary Hr'g at 69–70) (Page ID #867–68); *see also* R. 43-8 (Req. for Factual Contents of Investigation Report) (Page ID #533). In 1996, a paralegal with Kentucky's Department of Public Advocacy sent a letter to a circuit court clerk requesting legal records for post-conviction purposes. R. 10-3 (App. Vol. I at 23) (Page ID #149). The record also contains two medical release forms, both of which Stiltner signed within the limitations period—one on May 22, 1996 and one on March 26,

1997—that list a public defender as Stiltner's attorney. R. 90-1 (Medical Release Forms) (Page ID #1098–99). The forms also refer to the same paralegal who sent the letter requesting legal records as the public defender's associate. *Id.*

Stiltner had legal assistance after the limitations period as well. In 2004, Blair filed a Rule 11.42 motion to vacate, set aside, or correct Stiltner's sentence based on Stiltner's mental incompetence. R. 84 (Tr. of Evidentiary Hr'g at 68) (Page ID #866); *see also* R. 1-8 (Rule 11.42 Mot.) (Page ID #53). A year later, as a result of the Rule 11.42 motion, Kentucky appointed a public defender to represent Stiltner. R. 10-3 (App. Vol. I at 38) (Page ID #164). In 2006, that public defender asked Drogin to examine Stiltner. *See* R. 84 (Tr. of Evidentiary Hr'g at 11) (Page ID #809). A year after that, in 2007, the public defender filed a supplemental pleading to the Rule 11.42 motion, as well as a motion for equitable tolling and a motion for a court-ordered evaluation of Stiltner's mental incompetency. R. 10-4 (App. Vol. II at 1) (Page ID #170). When the state court denied Blair's motion to vacate, the public defender filed a notice of appeal. *Id.* at 18 (Page ID #187). A different public defender filed the actual appeal in 2008. *Id.* at 20 (Page ID 189). In 2012, Stiltner's fellow prisoner Gaither filed a post-conviction motion pursuant to Kentucky Rule of Civil Procedure 60.02. *See* R. 84 (Tr. of Evidentiary Hr'g at 101) (Page ID #899); *see also* R. 10-6 (App. Vol. IV at 8) (Page ID #254).

The availability of legal assistance, however, "is only part of the overall assessment of the totality of circumstances that goes into the equitable determination." *Bills*, 628 F.3d at 1101. And here, it is not a persuasive part because the reason that we care about the availability of legal assistance—that legal assistance makes it easier for a petitioner to timely file a habeas petition—

does not apply with the same force where the petitioner cannot direct the assistance in even the most fundamental ways. Given that Stiltner barely understood his claims, if he understood them at all, it is unfathomable that he would be able to conceive of the need to timely file a habeas petition and then, given his extremely short attention span and poor memory, that he would be able to monitor the legal assistance provided for him by a fellow prisoner or an attorney to make sure that they met the relevant deadline. Stiltner's testimony at the evidentiary hearing is revealing:

> Q. Mr. Stiltner, did a lot of people put a lot of things in front of you and tell you to sign them?
> A. Yeah. Yeah, they did.
> Q. Did you know what you were signing all the time?
> A. Not -- no, not all the time.
> Q. Would you say most of the time you knew what you were signing?
> A. Well, I didn't, no. I -- I couldn't read, so I couldn't have understood it.
> Q. So people might tell you something but you had to rely on that person, whoever it was?
> A. Yeah.
> Q. Okay. Can you tell me what "dispute" means, Mr. Stiltner.
> A. What?
> Q. "Dispute," what does that mean?
> A. I don't know.
> Q. Can you tell me what "incompetent" means?
> A. In common?
> Q. Incompetent.
> A. Incompetent. No.
> Q. Can you tell me what it means to "serve" someone?
> A. Serve. No.

R. 84 (Tr. of Evidentiary Hr'g at 185–86) (Page ID #983–94). If Stiltner could barely understand the need for legal assistance, let alone monitor that assistance, the assistance itself

cannot demonstrate that Stiltner could have timely filed a habeas petition. *See, e.g.*, *Jones v. Cate*, 590 F. App'x 701, 702 (9th Cir. 2015) (holding that the district court erred in finding a lack of diligence based on the petitioner's multiple state habeas petitions and the fact that the petitioner sought assistance from other inmates to draft correspondence, complete paperwork, and file prison grievances—as "the only inference which arises [from these facts] is that [the petitioner] was incapable of asking for help in filing a federal habeas petition"); *Jones v. Palmer*, No. 3:11-CV-00467-MMD, 2015 WL 56052, at **1–2, 5 (D. Nev. Jan. 5, 2015) (finding that the petitioner had exercised reasonable diligence in pursuing his claims to the extent that he was capable where petitioner's fellow prisoners made several state and federal filings on his behalf). Indeed, the Warden acknowledged at oral argument that a petitioner is entitled to equitable tolling if that petitioner's mental incompetence is so severe that he cannot cooperate with or monitor the fellow prisoners or the attorneys who are helping him. Of course, the Warden maintained that Stiltner *could* cooperate with and monitor the assistance he had, but we disagree given the evidence discussed above. Thus, we find that, given the totality of the circumstances, Stiltner diligently pursued his claims to the extent that he could understand them. *See Bills*, 628 F.3d at 1100. Indeed, that is exactly what Stiltner was doing when he said to Blair, "I was -- I get something done on mine," R. 84 (Tr. of Evidentiary Hr'g at 67) (Page ID #865), when he listened to Blair read him legal documents, *id.* at 73 (Page ID #871), and when he accompanied Gaither to the mail room, *id.* at 90–91 (Page ID #888–89).

We emphasize what we do not hold. We do not hold that a finding of mental incompetence obviates the need to inquire into causation—or more specifically, into diligence.

As we observed in *Ata,* "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations"—we require a causal link between the mental incompetence and the delayed filing. 662 F.3d at 742. Nor do we hold that, within our inquiry into diligence, the availability of legal assistance is unimportant. Legal assistance is, "in many circumstances[,] . . . highly relevant to the question of whether a petitioner's mental condition made it impossible to file a timely petition." *Bills*, 628 F.3d at 1101. But it is not highly relevant in these circumstances (and it is not dispositive in *any* circumstances). *Id.* What we do hold is that given the specific facts of this case, in particular Stiltner's severe mental incompetence—which left him unable to monitor the assistance he had in even the most basic ways—the district court erred in denying equitable tolling.

## III. CONCLUSION

For the reasons stated above, we **REVERSE** the district court's dismissal of Stiltner's habeas petition as untimely and **REMAND** for further proceedings.

**McKEAGUE, Circuit Judge, dissenting.** The majority purports to be crafting a narrow opinion based on the severity of Roy Stiltner's mental incapacity. It is careful to note that it is "not hold[ing] that a finding of mental incompetence obviates the need to inquire into causation" as required by *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011). Maj. Op. 22–23. It does so because a panel of this court does not have the power to overrule a prior, binding decision of this court. *Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010). Yet, despite the majority's cautious language, overruling precedent is exactly what it does.

## I

In *Ata*, we held that "[t]o obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused[1] his failure to comply with AEDPA's statute of limitations." 662 F.3d at 742. The majority maps onto this standard the test from the Ninth Circuit:

---

[1]The majority holds that "in the context of equitable tolling, causation is not a fact—it is a legal determination *based* on facts." Maj. Op. 13 (citing *Bilbrey v.Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005)). I would only note that there is not yet a binding case in our Circuit deciding whether causation is a question of law or fact in this context. Because questions of fact are reviewed only for an abuse of discretion whereas questions of law are reviewed de novo, the threshold issue of whether causation is a question of fact or law is often critical. Outside of equitable tolling, we generally treat causation as a question of fact. *See Warren v. Ohio Dept. of Public Safety*, 24 F. App'x 259, 267 (6th Cir. 2001); *Hasler v. United States*, 718 F.2d 202, 204 (6th Cir. 1983); *Pierce v. United States*, 718 F.2d 825, 829 (6th Cir. 1983); *Chandler v. Edgar W. Long, Inc.*, 623 F.2d 1139, 1142 (6th Cir. 1980). If, as in most other contexts, causation is a question of fact, we would give deference to the district court's determination that Stiltner's mental incompetence did not cause his untimely filing.

(1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, *see Holland*[ *v. Florida*, 560 U.S. 631, 649 (2010)], by demonstrating the impairment was so severe that either

(a) petitioner was unable rationally or factually to personally understand the need to timely file, or

(b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

(2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance. *See id.*

To reiterate: the "extraordinary circumstance" of mental impairment can cause an untimely habeas petition at different stages in the process of filing by preventing petitioner from understanding the need to file, effectuating a filing on his own, or finding and utilizing assistance to file. The "totality of the circumstances" inquiry in the second prong considers whether the petitioner's impairment was a but-for cause of any delay. Thus, a petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure. The petitioner therefore always remains accountable for diligence in pursuing his or her rights.

*Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010).

Under the majority's logic, however, the two requirements of *Ata* (and of *Bills*) would instead be collapsed into one requirement: mental incompetency. That is, any petitioner suffering from mental incapacity would be permitted to circumvent the statute of limitations. The majority asserts that this is untrue, and that it is only "the specific facts of this case, in particular Stiltner's severe mental incompetence—which left him unable to monitor the assistance he had in even the most basic ways" that separate this case from other equitable tolling cases involving mental incompetence. Maj. Op. 23. Do not be fooled. The majority has not and

cannot fashion any test or limiting principle to keep today's holding from eliminating *Ata*'s second requirement for equitable tolling.

The majority stresses the importance of a prisoner's ability to monitor his attorney. Maj. Op. 21–22. It reasons that Stiltner's mental incompetence is so severe that it satisfies both prong one (mental incompetence) and prong two (causation) of the *Ata-Bills* test. But while prong one focuses on a prisoner's mental abilities, prong two focuses on whether his inabilities *caused* the delay in filing. Yet under the majority's test, those two issues will be one and the same. A petitioner who "was unable rationally or factually to personally understand the need to timely file" or whose "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing" will *never* be able to monitor his attorney to ensure that his habeas petition is timely filed. 628 F.3d at 1100. Thus, under the same logic that the majority now uses, any petitioner who is mentally incompetent will, by definition, have simultaneously met the causation requirement of the *Ata-Bills* test—and so will be subject to *no* statute of limitations *at all*.

This is directly contrary to our precedent, which requires us to maintain *Ata*'s two-step inquiry into whether a mentally incompetent prisoner has been diligent in pursuing his federal habeas claims. Our caselaw makes clear that "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required." *Ata*, 662 F.3d at 742. "We are not free to pick and choose the portions of a prior published decision that we will follow and those that we will disregard." *United States v. Mateen*, 739 F.3d 300, 305 (6th Cir. 2014) (citation and quotation marks

omitted), *rev'd on other grounds*, *United States v. Mateen*, 764 F.3d 627 (6th Cir. 2014) (en banc).

In addition to being bound by our caselaw, we have a duty to enforce the law as Congress has enacted it. *See, e.g.*, *King v. Burwell*, 135 S. Ct. 2480, 2496 (2015) ("In a democracy, the power to make the law rests with those chosen by the people. Our role is more confined—'to say what the law is.' *Marbury v. Madison*, [5 U.S. 137, 177 (1803)]. That is easier in some cases than in others. But in every case we must respect the role of the Legislature, and take care not to undo what it has done."). Congress passed AEDPA with a strict one-year statute of limitations, 28 U.S.C. § 2244(d)(1), but "did not create a categorical exception to the statute of limitations for mentally incompetent defendants, so the statute of limitations must apply in at least certain situations for the mentally incompetent." R. 95, Order at 4, Page ID 1154. Accordingly, "the doctrine of equitable tolling is used sparingly by federal courts." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). We do not have the power to carve a blanket exception into AEDPA that does not exist, yet that is exactly what the majority does. Under the majority's logic, the statute of limitations period for petitioners who meet the mental incompetence prong of *Ata* would be tolled *in perpetuity*.

In addition to contravening AEDPA's text, the majority's holding goes against AEDPA's entire purpose. "The 1-year limitation period of § 2244(d)(1) quite plainly serves the well-recognized interest in the finality of state court judgments." *Duncan v. Walker*, 533 U.S. 167, 179 (2001). Congress's concern over late-filed petitions is particularly relevant here. Stiltner's habeas petition raises claims related to his competency to plead guilty. He pleaded guilty *thirty*

*years ago*. Evaluating his competency to plead guilty so long after his conviction will be an extremely difficult task,[2] and such difficulty reinforces the rationale behind AEDPA's statute of limitations period, which ran almost twenty years ago in 1997.

## II

Legal assistance and attorney representation are of particular relevance in determining if a habeas petitioner's mental incompetence caused his delay in filing his habeas petition. *Bills*, 628 F.3d at 1100. Our unpublished cases have stressed the importance of this inquiry in determining whether a petitioner was diligent and so deserving of equitable tolling. In *Price v. Lewis*, for example, we held that "[t]he exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity." 119 F. App'x 725, 726 (6th Cir. 2008) (citation and quotation marks omitted). Accordingly, because "Price actively pursued his claims during the limitations period by seeking and obtaining help completing legal paperwork," he was not entitled to equitable tolling. *Id.* Likewise, in *Plummer v. Warren*, we held that a pro se habeas petitioner's physical disabilities did not entitle her to equitable tolling of the statute of limitations period when the petitioner conceded that she did not do her own legal work—and thus her physical disabilities could not have impacted the timeliness of the filing. 463 F. App'x 501, 505–06 (6th Cir. 2012) (noting also that a review of her federal habeas petition and her prior state petition for collateral review

---

[2]Stiltner had a mental evaluation in 1966, but did not have a second one until *2006*. R. 91, Magistrate R&R at 18, Page ID 1117.

demonstrated that she raised the same issues in both such that additional legal work was unnecessary).

Once we note that a prisoner was represented by an attorney during his post-conviction efforts, we must look to the circumstances of that legal assistance. In nearly all cases, legal assistance will break the causal connection between mental incompetence and failure to timely file a habeas petition. *See Price*, 119 F. App'x at 726.

So it is here. As the majority notes, the legal assistance that Stiltner received was significant. Maj. Op. 19–20. Most strikingly, this included the assistance of Dennis Burke from the Kentucky Department of Public Advocacy, a licensed, state-appointed attorney who represented Stiltner in a state post-conviction matter. R. 91, Magistrate R&R at 23, Page ID 1122. At Burke's request, Dr. Eric Drogin evaluated Stiltner in 2006 to determine whether Stiltner was competent to stand trial when he pleaded guilty in 1986. *Id.* at 5, Page ID 1104. Burke then supplemented Stiltner's state post-conviction motion with a motion for equitable tolling on the basis of Stiltner's mental incapacities and a motion for a court-ordered mental competency evaluation. *Id.* at 2, Page ID 1101; R. 10-4, Motion at 1, Page ID 170. Thus, from 2005 to 2007, Stiltner was represented by a licensed attorney, this attorney knew that Stiltner's mental competency issues could form a basis for pursuing post-conviction relief, and this attorney actually provided Stiltner with sufficient legal assistance to enable him to make state court filings that sought post-conviction relief on the basis of Stiltner's mental incompetency.

Given this and other legal assistance, Stiltner has not carried his burden of showing that his mental incapacity caused the seventeen-year delay[3] in filing his habeas petition.

And Burke was not the only one to provide Stiltner with legal assistance between the enactment of AEDPA in 1996 and Stiltner's habeas petition. During the statute of limitations period from 1996 to 1997, attorney Timothy Riddell from the Kentucky Department of Public Advocacy represented Stiltner. R. 91, Magistrate R&R at 19, Page ID 1118 (noting the record contains "two medical release forms, both signed by Stiltner during the limitations period (dated May 22, 1996 and March 26, 1997), that name Timothy Riddell as 'my attorney' along with Tina Scott"). Paralegal Tina Scott of the Kentucky Department of Public Advocacy requested Stiltner's legal records for "post conviction relief" purposes from the state trial court on February 19, 1996. *Id.* at 19, Page ID 1118.

In December 2004, inmate David Blair helped Stiltner file a motion under Rule 11.42 of the Kentucky Rules of Criminal Procedure, raising various claims regarding his competency at the time of his arrest and conviction. *Id.* at 2, Page ID 1101. It was as a result of this filing that the state appointed Burke to represent Stiltner, as discussed above. *Id.* at 23, Page ID 1122; *see also id.* at 2, Page ID 1101 (noting that Burke filed a supplemental pleading to Stiltner's Rule

---

[3]Stiltner pleaded guilty to murder in 1986 and was sentenced to life in prison. R. 91, Magistrate R&R at 1, Page ID 1100. Because Stiltner's conviction became final prior to AEDPA's enactment in 1996, the statute of limitations period expired on April 24, 1997. Stiltner filed his first federal habeas petition in April 2013, but it was dismissed without prejudice for failure to exhaust. He filed the current habeas petition on April 15, 2014. R. 91, Magistrate R&R at 3, Page ID 1102. Thus, absent tolling, this petition would be untimely by nearly seventeen years.

11.42 motion in 2007, including a motion for equitable tolling). When the state court denied Stiltner's Rule 11.42 motion, Burke filed a notice of appeal[4] and licensed attorney Meggan Smith, also of the Kentucky Department of Public Advocacy, filed Stiltner's appeal. R. 10-4, Appeal at 18, 20, Page ID 187, 189; *see* R. 91, Magistrate R&R at 2, Page ID 1101 (noting that the Kentucky Court of Appeals affirmed the denied of Stiltner's Rule 11.42 motion).

In 2010, inmate Tim Fancher, Stiltner's cellmate, worked on Stiltner's case. *Id.* at 8, Page ID 1107. Fancher enlisted the help of fellow inmate Scot Gaither to assist with the legal research. In 2012, Gaither took over assisting Stiltner in filing a motion to vacate his sentence in state court pursuant to Kentucky Rule of Civil Procedure 60.02. The state court denied the motion in 2012. Gaither assisted Stiltner in appealing, but the state appellate court affirmed the denial in 2014. *Id.* at 2, 8, Page ID 1101, 1107.

Thus, the record shows that, during the statute of limitations period and afterwards, Stiltner had obtained legal assistance that enabled him to make court filings. The record also shows that his jailhouse lawyers and his state-appointed attorneys knew of Stiltner's mental health issues. But, despite significant legal assistance—from three licensed attorneys (Riddell, Burke, Smith) and three inmates (Blair, Fancher, Gaither)—Stiltner did not file a federal habeas petition until 2013. The district court dismissed this petition without prejudice as premature

---

[4]The magistrate judge states that "[o]n October 4, 2007, Stiltner, through his jailhouse lawyer, filed a notice of appeal." R. 91, Magistrate R&R at 2, Page ID 1101 (citing R. 10-4, Notice at 18, Page ID 187). A review of the record citation provided, however, indicates that this is clearly erroneous—the notice of appeal was filed by attorney Dennis Burke on October 10, 2007 (because an attorney does not receive the benefit of the prisoner mailbox rule).

because Stiltner failed to satisfy the exhaustion requirement. *Id.* at 3, Page ID 1102. He then filed the current federal habeas petition in 2014. *Id.* (reasoning that this petition was filed "most likely as a result of learning that his pending state-court matter [his Rule 60.062 motion] was finally resolved on February 28, 2014").

Importantly, it is Stiltner's burden to show that he was entitled to equitable tolling, yet he did not have any of his licensed attorneys (Riddell, Burke, or Smith) testify. Thus, we are left to wonder why his attorneys did not file a habeas petition. Because he was represented by attorneys and received assistance from fellow inmates, however, we cannot conclude that Stiltner delayed filing his habeas petition *because of* his incompetence. We cannot know if Stiltner's failure to timely file was a strategic choice by his attorneys, if his attorneys did not believe that his claims had merit, if they considered their representation of Stiltner to be limited to his state proceedings, if they were unable to work with Stiltner, if they abandoned Stiltner, or if any other of a myriad of reasons kept them from filing a federal habeas petition. We have no reason to believe that either the state-appointed attorneys or the jailhouse attorneys were not "competent." *See Bays v. Warden, Ohio State Penitentiary*, No. 3:08-CV-076, 2014 WL 29564, at *7 (S.D. Ohio Jan. 3, 2014) ("How could the mental incompetence of a litigant who has a competent attorney possibly excuse failure to meet a filing deadline?"); R. 91, Magistrate R&R at 21, Page ID 1120 ("Because Stiltner had *competent people* trying to help him during the limitations period, he cannot clear the bar for equitable tolling." (emphasis added)).

And yet, with no testimony from any of the licensed attorneys involved in Stiltner's post-conviction efforts, the majority concludes that the reason that Stiltner did not timely file a federal

habeas petition is that he was unable to monitor his attorneys. But, we have no reason to believe that his licensed attorneys would have filed a federal habeas petition if Stiltner *had* been able to monitor them. The majority focuses entirely on Stiltner's incompetence without connecting it to his delay. In the majority's view, Stiltner could not monitor his attorney, ergo causation. But again, this conflates the two prongs of *Ata* and *Bills*, because *any* petitioner who demonstrates mental incompetence—i.e., that he "was unable rationally or factually to personally understand the need to timely file" or was "unable personally to prepare a habeas petition and effectuate its filing," *Bills*, 628 F.3d at 1100—would be unable to monitor his attorney and so would have demonstrated causation. Under the majority's reasoning, a petitioner need not demonstrate causation *at all*, so long as he demonstrates mental incompetence. This test that contradicts the two-prong test established by *Ata* and would carve out a significant exception to AEDPA's strict one-year statute of limitations.

## III

*Ata* established a two-part test: (1) incompetence and (2) causation. The majority pretends that it is not overruling this test, but its reasoning cannot be reconciled with *Ata*. Because the majority's holding is inconsistent with our binding caselaw, *Ata*, 662 F.3d at 742, and is inconsistent with the clear directive of Congress, 28 U.S.C. § 2244(d)(1), I respectfully dissent.